UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FRS TRENCHCORE, INC., ET AL.                          CIVIL ACTION

VERSUS

FEDERAL AVIATION
ADMINISTRATION, ET AL.                          NO. 23-01571-BAJ-EWD

RULING AND ORDER

This is a contract dispute disguised as a civil rights and tort case. Plaintiffs FRS Trenchcore, Inc., F. Sherman Dupre, and Erika Dupre sued Defendants Federal Aviation Administration and Robert Higgins under various Louisiana state tort theories of liability and for federal constitutional violations after Higgins, a Contracting Officer for FAA, terminated Trenchcore's contract to provide heating, ventilation and air conditioning (HVAC) to the FAA. Now before the Court is Defendants' **Rule 12(b)(1), (6) Motion to Dismiss (Doc. 7)**. The Motion is opposed. (Doc. 12). For the reasons that follow, the Motion will be granted.

I.      BACKGROUND

The following allegations are accepted as true for present purposes:

Trenchcore is a Louisiana corporation with its principal place of business in Brusly, Louisiana. F. Sherman Dupre and Erika Dupre are the owners of Trenchcore and sureties of bonds procured on behalf of Trenchcore. (Doc. 1 ¶ 2).

On July 16, 2021, Trenchcore and the FAA entered into a contract worth $897,974.00 for HVAC work at the FAA's Longview Site in Longview, Texas. (*Id.* ¶

5). Under the contract, "Trenchcore was to furnish all materials and supplied labor required to install, construct, renovate, and complete the Project in accordance with the original plans outlined by the FAA." (*Id.* ¶ 6). Trenchcore encountered "an eighteen-week delay associated" with obtaining certain equipment that "was critical to the project." (*Id.* ¶ 7). Trenchcore's "mitigation measures" were denied by Higgins, "although he was keenly aware of the delays in the project." (*Id.* ¶ 8). On November 8, 2022, Higgins "terminated Trenchcore's contract for cause while still owing Trenchcore for its efforts on the contract." (*Id.* ¶ 9). Since then, Plaintiffs have allegedly faced threats of legal action from subcontractors, (*id.* ¶ 12), and have been unable "to submit public bids for work on other projects . . . ," (*id.* ¶ 15). Further, Plaintiffs' surety has purportedly "plac[ed] a hold on all Trenchcore's bonded work." (*Id.* ¶ 14).

Plaintiffs sued, alleging claims against FAA and Higgins under Louisiana law for unjust enrichment, negligent and intentional interference with a business or contractual relationship, negligent and intentional infliction of emotional distress, and against Higgins individually under the U.S. Constitution and 42 U.S.C. § 1983 for violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. (Doc. 1). Plaintiffs allege that the FAA has withheld "payment of the contract balance in the amount of $351,217.40." (*Id.* ¶ 11).

## II.    LEGAL STANDARD

Defendants invoke dismissal under Federal Rules of Civil Procedure Rule 12(b)(1) and Rule 12(b)(6). The analysis under both Rules is functionally the same.

The critical issue is whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) ("A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief.").

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

## III.    DISCUSSION

Defendants seek dismissal of Plaintiffs' tort claims, arguing that: (1) the claims should be treated as contractual claims valued at over $10,000, and therefore the Court is deprived of jurisdiction by the Tucker Act, 28 U.S.C. § 1491(a)(1)-(2), which gives exclusive jurisdiction over such claims to the U.S. Court of Federal Claims; and

(2) the Plaintiffs have failed to name the proper parties or exhaust administrative remedies under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.,* which deprives the Court of jurisdiction. (Doc. 7-1 at 1). Defendants seek dismissal of the § 1983 claims against Higgins, arguing that § 1983 does not apply to federal officers and Higgins has qualified immunity. (*Id.* at 2). Finally, Defendants seek dismissal of Plaintiffs' claims generally for failing to state a claim upon which relief may be granted. (*Id.*). Because the Court finds that dismissal of the tort claims is appropriate under the Tucker Act, and dismissal of the claims against Higgins are appropriate because § 1983 does not apply to federal officers under these circumstances, the Court will not address Defendants' alternative arguments for dismissal.

### a. Plaintiffs' Tort Claims

The United States may be sued only to the extent that it waives its sovereign immunity. In the Federal Tort Claims Act, the Government has waived its sovereign immunity in certain specified classes of tort claims. The Act enables district courts to exercise jurisdiction over claims against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. *See* 28 U.S.C.A. § 1346(b). The Federal Tort Claims Act does not extend subject matter jurisdiction over breach of contract claims. *Davis v. United States,* 961 F.2d 53, 56 (5th Cir. 1991). To the point, the United States Court of Appeals for the Fifth Circuit has recognized "[t]hat claims based upon breach of contract are wholly alien to the Tort Claims Act. . . ." *Young v. United States,* 498

F.2d 1211, 1218 (5th Cir. 1974); *see also Blanchard v. St. Paul Fire and Marine Ins.,* 341 F.2d 351, 358–59 (5th Cir. 1965), *cert. denied,* 382 U.S. 829 (1965).

Lawsuits against the United States for breach of contract are not barred altogether, however. The Tucker Act waives the federal government's immunity for claims founded upon an express or implied contract with the United States. 28 U.S.C. §§ 1346(a)(1), 1491(a)(1). However, the districts courts have jurisdiction over such claims (concurrent with the Court of Federal Claims) only if claimed damages do not exceed $10,000. 28 U.S.C. § 1346(a)(1). Where claimed damages are above $10,000, jurisdiction lies exclusively in the Court of Federal Claims. *Id.* at § 1491(a)(1); *Amoco Prod. Co. v. Hodel,* 815 F.2d 352, 358 (5th Cir. 1987).

Potential litigants must carefully weigh the distinctions between the respective waivers of sovereign immunity, because "claims . . . which are founded upon an alleged failure to perform explicit or implicit contractual obligations . . . are not deemed 'tort' claims for the purposes of the divisions between the [Federal] Tort Claims Act and Tucker Act jurisdiction," regardless of how a plaintiff characterizes those claims. *Blanchard,* 341 F.2d at 358; *See Davis v. United States,* 961 F.2d 53, 56 (5th Cir. 1991); *see also City Nat'l Bank v. United States,* 907 F.2d 536, 546 (5th Cir. 1990); *L. v. Aetna Life Ins. Co.,* No. 5:09-CV-116-DCB-JMR, 2011 WL 2840870, at *2 (S.D. Miss. July 14, 2011) ("In determining whether a claim is based on tort or contract, the court is not bound by the plaintiff's characterizations in the complaint.").

Here, Plaintiffs' tort claims are entirely premised on the alleged breach of Trenchcore's contract with the FAA. For this reason, the claims are "cognizable solely

5

under the Tucker Act, not the FTCA." *Awad v. United States*, No. 1:93CV376, 2001 WL 741638, at \*5 (N.D. Miss. Apr. 27, 2001), *aff'd*, 301 F.3d 1367 (Fed. Cir. 2002). "And, because the damages sought are in excess of $10,000, the United States Court of Federal Claims possesses exclusive subject matter jurisdiction to adjudicate this claim." *Id.*

Plaintiffs do not substantively dispute this argument in their opposition to Defendants' Motion, and instead rely on the single, conclusory statement that "this Court is keenly aware" that "only non-contractual claims" "were asserted in this matter." (Doc. 12 at 3). This will not suffice, as Plaintiffs' five paragraphs of factual allegations describe only the circumstances surrounding the creation, partial performance, and alleged breach of their contract with the FAA. (Doc. 1 ¶¶ 5–9). For this reason, the Court finds that Plaintiffs' tort claims "arise[] from and [are] inextricably intertwined with the government's supposed breach" of Trenchcore's contract with the FAA. *Awad*, 2001 WL 741638, at \*5 (dismissing numerous tort claims asserted by plaintiff against the United States because they arose solely from the United States "not fulfilling its purported contractual obligation" with plaintiff); *see Aetna Life*, 2011 WL 2840870, at \*3–4 (dismissing claims, including a claim for negligent infliction of emotional distress, which, "though nominally sounding in tort," arose "out of the alleged breach [of plaintiff's] disability insurance policy").

Plaintiffs have not met their burden to prove that subject matter jurisdiction exists here, and therefore the Court grants Defendants' motion to dismiss Plaintiffs' tort claims.

### b. Plaintiffs' Constitutional Claims

Plaintiffs' Count IV asserts claims against Mr. Higgins individually under 42 U.S.C. § 1983 for racial discrimination in termination of the contract with the FAA in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. (Doc. 1 ¶¶ 18–19). Defendants argue that the claims should be dismissed under Rule 12(b)(6) for failure to state a claim because § 1983 "applies only to claims asserted against state officials and does not apply to actions taken by federal agencies or employees," (Doc. 7-1 at 9 (quoting *Johnson v. Dettmering*, No. 19-0074-BAJ-SDJ, 2021 WL 3234623, at \*3 (M.D. La. July 29, 2021) (quotations omitted)), and the narrow exceptions to this rule outlined by the U.S. Supreme Court in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), do not apply and should not be extended to cover Plaintiffs' claim here. (*Id.*).

To explain why the Court agrees with Defendants, and therefore will dismiss Plaintiffs' § 1983 claims, requires a brief explanation of *Bivens* and subsequent case law.

Section 1983 entitles an injured person to money damages if a state official violates his or her constitutional rights, but Congress has not created an analogous statute for federal officials. *See Ziglar v. Abbasi*, 582 U.S. 120, 130–31 (2017). In *Bivens*, however, the Supreme Court recognized that an individual may seek recovery for constitutional violations committed by a person acting under color of federal law. *See* 403 U.S. at 396–97. Thus, a *Bivens* action is the federal analog to lawsuits brought under 42 U.S.C. § 1983 against a person acting under color of state law. *Hartman v.*

*Moore*, 547 U.S. 250, 254 n.2 (2006). However, the United States Supreme Court has only recognized a viable *Bivens* action three times, and *Bivens* claims are generally limited to the following three circumstances: (1) manacling a plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment, (2) sex discrimination by a congressman against a staffer in violation of the Fifth Amendment's Due Process Clause, and (3) failure to provide medical attention to an asthmatic prisoner in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (citations omitted).

Since these isolated examples, Supreme Court has "stressed" that any extension of *Bivens* to new factual scenarios is now a "disfavored judicial activity." *Maria S. ex rel. EHF v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019) (quotations omitted). To determine whether Plaintiffs can assert their claims under *Bivens*, the Court must first consider whether this case presents a previously recognized *Bivens* action or whether the case is "different in a meaningful way" from the three cognizable types of *Bivens* claims. *Byrd*, 990 F.3d at 882. If the claim is not meaningfully different, the claim may proceed. *See id.* If the claim is meaningfully different and, consequently, presents a new *Bivens* context, the Court must determine whether there are any special factors that counsel against extending *Bivens. Id.* This "special factors" inquiry "must concentrate on whether the judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed," or whether an "alternative remedial structure"

exists. *Abbasi*, 582 U.S. at 136. The special factors inquiry is important because "it is a significant step under separation-of-powers principles for a court to determine that it has the authority . . . to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation," as opposed to Congress doing so. *Id.* at 133.

Plaintiffs acknowledge that Higgins is a contracting officer with the FAA and not a state official, (Doc. ¶ 3), and therefore Plaintiffs' claims against Higgins are barred under § 1983 unless they present a previously recognized *Bivens* action or special factors favor extending *Bivens* to cover the claims.

Because Plaintiffs asserts claims for racial discrimination in the termination of a contract, Plaintiffs' claims do not present a previously recognized *Bivens* action, as enumerated above. For this reason, the Court must consider whether special factors counsel against extending a *Bivens* claim to this context. They do.

As Defendants argue, "Congress has designed an alternative remedial structure" for torts by federal officers through the Federal Tort Claims Act. (Doc. 7-1 at 11 (citing *Oliva*, 973 F.3d at 443)). "Although an alternative form of relief is not a necessary special factor, it may be a sufficient one." *Oliva*, 973 F.3d at 444. "And when alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* (citing *Abbasi* 582 U.S. at 145. Here, the existence of an alternative form of relief for Plaintiffs strongly suggests that a *Bivens* remedy is not available in this context. Additionally, "[b]ecause Congress has long been on notice that the Supreme Court is disinclined to extend *Bivens* to new contexts, its failure to provide a damages remedy

here suggests more than mere oversight." *Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (citations and internal quotation marks omitted).

Furthermore, Congress has granted the FAA's Office of Dispute Resolution for Acquisition (ODRA) the authority to adjudicate contract disputes involving the FAA. *See* 49 U.S.C. § 40110(d)(4). And Plaintiffs know this, because they have filed a separate, currently pending administrative challenge to the termination of their contract with ODRA. (*See* Doc. 7-1 at 11 (citing Plaintiffs' ODRA case)).

For these reasons, the Court finds that special factors counsel against extending *Bivens* to Plaintiffs' claims. Plaintiffs do not even attempt to dispute the special factors outlined above, and instead seek leave to amend their complaint to include a violation of the Fifth Amendment, presumably because one of *Bivens'* recognized applications is to a Fifth Amendment claim for sex discrimination. (Doc. 12 at 4–5). *See Davis v. Passman*, 442 U.S. 228, 230, 248–49 (1979) (recognizing a *Bivens* remedy for Fifth Amendment sex discrimination claim). But this would not save Plaintiffs' claims.

As the Fifth Circuit explained, *Davis* does not mean that "the entirety of the Fifth Amendment Due Process Clause is fair game in a *Bivens* action." *Cantú*, 933 F.3d at 422. In *Chappell v. Wallace*, 462 U.S. 296 (1983), the Supreme Court rejected a Fifth Amendment due process claim because plaintiffs claiming racial discrimination were military service members, and not congressional employees like the *Davis* plaintiffs. *Id.* at 297, 305; *see also Cantú*, 933 F.3d at 422. If the wrongful termination in *Chappell* presented a new *Bivens* context unworthy of extension, it

follows that Plaintiffs' proposed Fifth Amendment claims—which involve alleged racial discrimination in the termination of a contract and are therefore even more factually distinct from the claims in *Davis*—must also present a new *Bivens* context unworthy of extension.

In sum, the Court finds that *Bivens* does not apply to Plaintiffs' constitutional claims against Higgins, nor would it apply to Plaintiffs' proposed amended claims. Defendants' Motion will therefore be granted and Plaintiffs' claims against Higgins will be dismissed with prejudice.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Rule 12(b)(1), (6) Motion to Dismiss (Doc. 7)** be and is hereby **GRANTED**, and Plaintiffs' claims be and are hereby **DISMISSED WITH PREJUDICE**.

Judgment will issue separately.

Baton Rouge, Louisiana, this 19th day of September, 2024

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**